### L. & D. GROCE v. ZUMWALT.

The verdict of a jury, on a writ of ad quod damnum, may be objected to by any person who may consider himself injured by the building of the proposed dam, and the court is bound to hear the testimony offered.

*W. M. Campbell*, attorney for plaintiff in error.

1st. It does not appear that the jury were sworn by any officer authorized to administer the oath. In this case there is no affidavit attached to the proceedings of the jury to show what oath they took, or how, or by whom, they were sworn, but the sheriff, in his return, states that they were sworn by him. Our statute, page 419, section 9, determines what officers may administer oaths, and the sheriff is not one of them. Of course he cannot administer an oath in any case unless specially authorized to do so by statute.

The statute respecting mills and mill dams, gives no such special authority; of course no oath was legally administered to said jury. If so, it was clearly the duty of the circuit court to have set aside the verdict and quashed the proceedings of the jury upon the suggestion of that material defect.

2d. The jury did not find either one way or the other a part of the facts which they were required to find by the statute; see Missouri Statutes, page 406, section 7. In proceedings of this kind where private property is taken, or injured, without compensation, the parties should be held to a strict compliance with the provisions of the statute, and permission should not be given to build a mill that by possibility may injure the public, or individuals, unless the petitioner, and sheriff, and jury, have complied with the requisitions of the statute in all its particulars.

3d. The court erred in refusing to permit said David and Lewis Groce to introduce testimony to prove that Jonathan Craig, one of the jurors, was of kin to the petitioner. It is the undoubted right of every individual whose property is taken for public purposes to have an opportunity of objecting to jurors who are interested, or of kin, to the petitioners. The question then may arise, when must the objections be made? The parties injured cannot do it at the time the jury are summoned, because they have no notice of the proceeding, and do not know who are the persons that compose the jury. In this way parties interested, or their kin, may compose the entire jury, and no chance be given for objections.

4th. The court erred in not permitting said David and Lewis Groce to introduce evidence to disprove the verdict of the jury.

*Primm* and *Drake,* attorneys for defendant in error.

The bill of exceptions, as well as the assignment of errors, points out the irregularities supposed to appear on the face of the proceedings; and

1st. It is assigned as an irregularity that the jury were not sworn by an officer authorized by law to administer oaths.

2d. That the jury did not find either one way or the other a part of the facts which they were sworn to enquire into.

3d. That one of the jurors was of kin to the defendant.

As to these supposed irregularities it is observed as to the *first:*

1st. That *quoad* this proceeding, the sheriff is made in part a judicial officer. The holding of the inquest by him necessarily involves the performance by him of all acts that may be requisite to the perfect fulfilment of the duty imposed upon him. The coroner is an executive officer. In some cases, however, he becomes a judicial officer, as

when he holds an inquest over a dead body. In this instance the law does not by any words give him authority to administer oaths, but it cannot be denied that he has such authority necessarily resulting from the nature of the duty which he is required to perform.

2d. The jury were not required to do an impossibility, and if they have been silent in their verdict as to any branch of inquiry to which the law directs their attention, it will be presumed that there were not facts in existence connected with such inquiry upon which they could base a finding, either one way or the other. By reference to the verdict it will be found that the jury respond to each inquiry proposed by the 7th sec. of the act, p. 406, saving the second. It is then inferable and properly, so that there were no mansion houses, &c., situate on the neighboring lands, and of course no finding could be made either one way or the other as to matters not *in esse.* But, in any event, the answer to the second branch of the jury's inquiry is involved in their answer to the first.

3d. It is remarked that neither the act under which this proceeding is had, nor any other statute of the land, disqualifies a man from serving as a jury on account of his relation as kin to either party in a cause. If the objection could at all be valid, it would only effect the juror's competency, and an objection for incompetency is only admissible before oath, it comes too late after the juror is sworn.

The 8th section of the act concerning grand and petit jurors, page 342, Rev. L. says, "no exception against any juror, on account of his citizenship, nonresidence, state, or age, or other legal disability, shall be allowed after the jury are sworn."

Statement of the case, and opinion delivered by McGIRK, Judge.

In June, 1836, Zumwalt filed his petition in the Saint Charles circuit court to have a writ of ad quod dammum issued to condemn certain grounds, and to have leave to build a mill and mill dam. The petition states that Zumwalt owned the land on both sides of the stream, and that he wishes to build a dam eight feet high. The writ was issued to the sheriff, who executed the same by summoning a jury, who returned their verdict as follows:

1st. " We, the jury, do certify that we have viewed said mill seat, and do not consider any damage will be done by said mill dam.

2d. "Neither do we consider said stream navigable.

3d. "Neither do we consider that the health of said neighborhood will be injured."

The petition alleges that the petioner owns the land on both sides of the stream where the dam is proposed to be erected, but it does not show how far up the stream his land extends.

When the jury's verdict was returned into court, the Groces appeared, and offered objections to the leave to build the mill. They offered to prove that they owned the land on both sides of the stream a short distance from the place where the dam was proposed to be erected, and that there was only eighteen inches fall in the stream from the place of erecting the dam to their line, consequently the water on their land would be six feet six inches, by which their own mill seat would be destroyed, a good spring covered up, and a building site destroyed, besides other injuries to the land.

The court refused to hear the testimony—overruled the objections, and gave leave to build the mill dam.

The only question for the consideration of the court is, whether the party who may consider himself injured by the building of a dam, has a right to make objections?

*The verdict of a jury, on a writ of ad quod damnum may be objected to by any person who may consider himself injured by the building of the proposed dam, and the court is bound to hear the testimony offered.*

This writ of ad quod damnum is founded on the statute respecting mills and mill dams; Revised Code, 405, 6, 7. The first section of the act provides for cases when the person proposing to erect the dam is owner of the land on both sides where the dam is proposed to be erected. The second section puts the case where he is the owner only on one side at that point. The eighth section requires the jury in that case, to inquire of the value of one acre on the opposite side, and directs the sheriff to summon the owner. In such case, the law no where provides that any other owner in any other case shall be summoned. This is, in my opinion, a mere omission.— But notwithstanding this omission, it seems to me the legislature did not intend to exclude other owners from appearing voluntarily and making objections. The first duty of the jury by the seventh section was, to inquire what damage will ensue to each proprietor by reason of inundations consequent upon the erection of the dam? They have said generally, "no damage, or rather we do not consider any damage will be done by said mill dam." The fact that a dam, eight feet high would throw water six and a half feet on other people's land, must have been concealed from them, otherwise they never could have found upon their oaths, that no damage would be done to any body. It might be, that as they found no improve-

73

JUNE TERM
1837.

L. & D. Groce
v.
Zumwalt.

ments there, they thought they had no right to inquire about it. The second duty or point of inquiry is, will orchards, gardens, &c. be injured?

The thirteenth section provides, that "if upon a view' of the inquest returned by the sheriff, and other evidence, if any such shall be produced, it shall appear to the court that the mansion house of any proprietor, or out houses, curtilages, or gardens thereto belonging, or orchard, will be overflowed, or the health of the neighborhood will be materially annoyed by the stagnation of waters consequent upon the erection of such dam, the court shall not permit it." I am clearly of opinion, that the equity of this thirteenth section embraces more than is contained in the words. For, by the seventh section, the jury are to inquire in the first instance, what injury will be done to all sorts of proprietors by the waters overflowing?— This embraces uncultivated lands, mills already existing, mill sites, tan yards, meadows, and corn fields. Can it be supposed, that when in the thirteenth section, the legislature enumerates the mansion house, the out houses, curtilages, gardens and orchards, and the health of the neighborhood, they intended to leave unprotected all other cases that might properly be embraced in the first duty of inquiry? I think not, and conclude that wild lands unimproved, mill seats, tan yards, and corn fields, are to be protected, as well as mansion houses, orchards, &c.— and that these things are within the equity and spirit of the thirteenth section. Therefore, the proof ought to be received. The judgment of the court below is reversed; the cause is remanded for further proceedings.

TOMPKINS, Judge. I concur in this opinion.